UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-78

**BONNIE CHRISTY**                                                                                       **PLAINTIFF**

v.

**SUN LIFE ASSURANCE COMPANY OF
CANADA and HOBBY LOBBY STORES, INC.**                                **DEFENDANTS**

### MEMORANDUM OPINION

This administrative review is before the Court upon Plaintiff's Brief (Docket #13). Defendants have responded (Docket #16). Plaintiff has replied (Docket #17). The Court has reviewed the administrative record (Docket #9). This matter is now ripe for adjudication. For the following reasons, Plaintiff's claim is DENIED.

### BACKGROUND

Plaintiff Bonnie Christy worked as a picture framer for Hobby Lobby Stores, Inc. ("Hobby Lobby") from October 4, 2001, to July 23, 2007. Administrative Record 132 (hereinafter "A.R."). Christy paid premiums on a disability insurance policy offered and administered by Hobby Lobby. In 2006, Hobby Lobby changed its disability policy to one administered by Sun Life Assurance Company of Canada ("Sun Life"). The policy is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and Christy's coverage became effective on April 1, 2006.

Christy admits that she suffers from several ongoing health problems, although she was still able to work full time up until February of 2007. A.R. 131. In 2006, Christy began experiencing severe headaches and went to see her family physician, Dr. Meals. On August 17, 2006, Dr. Meals diagnosed Christy with migraines, and later referred her to Dr. Siva, a

neurologist.  A.R. 285.  On February 28, 2007, and March 28, 2007, Dr. Siva diagnosed Christy's condition as migraines.  A.R. 325-26.  Christy quit working on February 24, 2007.  Christy applied for disability benefits on July 12, 2007.  A.R. 149.  She claimed disability due to migraines, gout, back pain, arthritis and asthma.  A.R. 141-42.  She was terminated by Hobby Lobby on July 23, 2007, due to illness.  A.R. 132.

Sun Life denied Christy's disability claim on June 26, 2008.  A.R. 829-37.  In its letter to Christy's attorney, Sun Life detailed the relevant portions of the disability policy, Christy's claims, Christy's occupation and the physical requirements of that occupation according to a vocational consultant, the medical information that was reviewed, and the result of that review.  Sun Life stated, in part:

> Based on our medical consultant's review of Ms. Christy's file, it is the opinion of our medical consultant that there is no clinical evidence in the file to support an impairment related to asthma or back pain.  There is clinical evidence to support the condition of gouty arthritis and per the Medical Disability Advisor, it is estimated an impairment guideline would be 3 to 14 days.  There is clinical support in the file for the impairment related to migraines; however, as of the note from Dr. Siva March 28, 2007 (which indicated MRI of brain was normal, MRV and MRA were unremarkable, and that Imitrex at the onset of headaches was effective) there is not clear clinical evidence to support a severe impairment that would affect functionality.  Additionally, the Attending Physician Statement completed by Dr. Meals on July 30, 2007 does not have associated office notes that indicate an exam to support the limitations indicated.

A.R. 835.  On July 15, 2008, Christy filed an administrative appeal.  A.R. 847-92.  Her claim was denied.  A.R. 899-901.  Christy now appeals to this Court.

## STANDARD

To begin with, the Court recognizes that "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator."  *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514,

522 (6th Cir. 1998).  The administrative record includes all documentation submitted during the administrative appeals process "because this information was necessarily considered by the plan administrator in evaluating the merits of the claimant's appeal."  *Kalish v. Liberty Mut.*, 419 F.3d 501, 511 (6th Cir. 2005).

Generally, courts "review a plan administrator's denial of ERISA benefits *de novo*." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  However, when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious."  *Id.*  "The arbitrary and capricious standard is the least demanding form of judicial review and is met when it is possible to 'offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999) (citation omitted).  "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted).

Still, while the arbitrary and capricious standard is deferential, it is not "'without some teeth.'" *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted).  A court's obligation to review the administrative record "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues."  *Id.*  As the Sixth Circuit has noted, without such a review "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence– no matter how obscure or untrustworthy– to support a denial of a claim

for ERISA benefits." *Id.*

## DISCUSSION

The parties agree that "arbitrary and capricious" is the appropriate standard of review. Plaintiff argues that Sun Life's decision was arbitrary and capricious because (1) Sun Life denied benefits on the basis that Plaintiff's disability was due to a pre-existing condition, even though Plaintiff had never received treatment for headaches prior to the effective date of coverage; and (2) Sun Life found that Plaintiff could perform the essential job functions of her job even though Plaintiff's treating physician said she could not lift or carry a maximum of twenty pounds.

**I.     Pre-Existing Condition**

One of the reasons given by Sun Life for denial of Plaintiff's claim is that her disability was due to a pre-existing condition. Sun Life defines "pre-existing condition" in its policy:

> Pre-Existing Condition means during the 3 months prior to the Employee's Effective Date of Insurance the Employee:
> - received medical treatment, consultation, care or services, including diagnostic measures, or took prescribed drugs or medicines; or
> - had symptoms which would have caused an ordinarily prudent person to have consulted a health care provider for diagnosis, care or treatment.

A.R. 53. Plaintiff's coverage was effective on April 1, 2006. This means that any medical treatment or symptoms (as defined above) that occurred between January 1, 2006, to March 31, 2006, preclude recovery under the policy. Plaintiff argues that her migraines were not a pre-existing condition because she was never diagnosed with migraine headaches in those three months. Sun Life expressed the following findings in its first denial of benefits letter:

> [O]ur medical consultant's review of the documentation indicates Ms. Christy, during the time period of January 1, 2006 through March 31, 2006 received medical treatment, consultation, care or services, including diagnostic measures, or took prescribed drugs or medicines; or had symptoms which would have caused an ordinarily prudent person to have consulted a health care provider for

4

> diagnosis, care or treatment. . . . [D]uring Ms. Christy's visit with Dr. Siva, she reported she had been having headaches for one to two years prior to this visit. Any impairment caused by . . . headaches . . . would not be covered under the Group policy due to the "pre-existing condition exclusion" noted above.

A.R. 836. According to Sun Life, Plaintiff presented additional medical records for Sun Life's consideration on appeal, although only two of the records had not already been reviewed. Those two records did not deal with Plaintiff's migraine issues. The second denial letter contains no mention of Plaintiff's headaches, other than a statement that it was one of the conditions she cited as a reason for her disability. A.R. 899-901.

The Court finds that it was not arbitrary and capricious for Sun Life to conclude in its first denial that Plaintiff's migraines fell under the pre-existing condition exclusion. Dr. Siva's records from February 28, 2007, state that Plaintiff complained of headaches "over the last one to two years." A.R. 318. When these headaches first started, they occurred almost daily, with nausea lasting "several hours." A.R. 318. The Court cannot say that it was arbitrary and capricious for Sun Life to apply these statements to mean that Plaintiff had suffered symptoms "which would have caused an ordinarily prudent person to have consulted a health care provider for diagnosis, care or treatment" prior to the effective date of coverage. Sun Life provided a reasoned explanation for denial, based on the evidence. The fact that Plaintiff's headaches were not raised in the second denial letter is insignificant as it does not appear that Plaintiff produced any new evidence or arguments relating to her migraines.

## II.    Essential Job Functions

Sun Life also denied benefits to Plaintiff because she was not considered totally disabled. A.R. 835 ("There is clinical support in the file for impairment related to migraines; however, . . . there is not clear clinical evidence to support a severe impairment that would affect

5

functionality."). Under Sun Life's disability policy, a participant must be "totally disabled" to receive long term disability benefits. Total disability is defined in the policy as:

> Totally Disabled means, during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience.

A.R. 19. The Elimination Period is "a period of continuous days of Total or Partial Disability for which no LTD Benefit is payable." A.R. 15. The policy also defines "material and substantial" and "own occupation":

> Material and Substantial Duties means, but is not limited to, the essential tasks, functions, skills or responsibilities required by employers for the performance of the Employee's Own Occupation. Material and Substantial Duties does not include any tasks, functions, skills or responsibilities that could be reasonably modified or omitted from the Employee's Own Occupation.
>
> . . .
>
> Own Occupation means the usual and customary employment, business, trade, profession or vocation that the Employee performed as it is generally recognized in the national economy immediately prior to the first date Total or Partial Disability began. Own Occupation is not limited to the job or position the Employee performed for the Employer or performed at any specific location.

A.R. 16-17. The denial letter to Plaintiff cited the following as evidence that impairment did not affect functionality: (1) Dr. Siva's records which indicated normal MRI of the brain, MRV and MRA were unremarkable, and that Imitrex at the onset of headaches was effective; and (2) Dr. Meals's Attending Physician Statement from July 30, 2007, which did not contain any associated notes of an exam which supported the restrictions indicated (limited to lifting or carrying 20 pounds). A.R. 835. Therefore, the medical consultant reviewing Plaintiff's claim did not believe

that Plaintiff could not perform the tasks of a "Framer" as described by the vocational consultant.

The vocational consultant took Plaintiff's job title of Framing Clerk and the duties associated with that job as reported by Hobby Lobby and found the job title that most closely aligned in the Dictionary of Occupational Titles ("DOT"). This occupation is classified as "Framer" and requires the physical ability to, among other things: (1) lift, carry, push, or pull between 20 and 50 pounds occasionally; (2) lift, carry, push, or pull between 10 and 25 pounds frequently; (3) frequent stooping, reaching, handling, and fingering; and (4) clarity of vision.

Based on the evidence available, the Court cannot find that Sun Life's decision was arbitrary and capricious. All accounts indicate that Plaintiff's Imitrex medication was "quite effective." A.R. 326. Dr. Meals's Attending Physician's Statement states that Plaintiff can perform repetitive simple grasping, firm grasping, and fine manipulation. A.R. 161. Dr. Meals also opined that Plaintiff could frequently sit, stand, bend, squat, balance, kneel, crawl, reach above shoulder level, and lift/carry twenty pounds. A.R. 161. Furthermore, the denial letter rationally explains why Dr. Meals's restrictions as to Plaintiff's ability to lift over twenty pounds were not given weight. "Nothing in [ERISA] . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). "As long as a plan administrator offers a reasonable explanation based upon the evidence for its decision, it may choose to rely upon the medical opinion of one doctor over that of another doctor." *Roumeliote v. Long Term Disability Plan for Employees of Worthington Industries*, 475 F. Supp. 2d 742, 746 (S.D. Ohio 2007), *aff'd* 292 Fed. Appx. 472 (6th Cir. 2008). Therefore, the Court finds that Sun Life's

7

decision to deny long term disability benefits to Plaintiff was not arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's claim is **DENIED**.

An appropriate order shall issue.